# Third District Court of Appeal

## State of Florida

Opinion filed March 20, 2024.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D23-0882
Lower Tribunal No. 22-20155
_____

## Midnight Express Power Boats, Inc.,
Appellant,

vs.

## Victor Raul Aguilar, et al.,
Appellees.

An Appeal from the Circuit Court for Miami-Dade County, Barbara Areces, Judge.

Cullin O'Brien Law, P.A., and Cullin O'Brien (Fort Lauderdale), for appellant.

Brown Sims, P.C., and Cody L. Frank (Miramar), for appellee SeaVee Boats.

Before EMAS, SCALES and LOBREE, JJ.

SCALES, J.

Appellant Midnight Express Power Boats, Inc. ("Midnight") appeals a May 2, 2023 order denying Midnight's motion to intervene as a party defendant in an injunction action brought by appellee Ram Investments of South Florida, Inc. ("Ram") against Ram's former employee, Victor Aguilar ("Aguilar"). Based on the facts and circumstances presented in this case and notwithstanding a default having been entered against Aguilar, we reverse because Midnight should have been allowed to intervene in the injunction proceedings.

## I.    Relevant Background

In 2014, Ram, a boat manufacturer, hired and trained Aguilar as a laminator. During Aguilar's approximately eight years of employment with Ram, he rose to a supervisory position. In November 2018, Ram required several of its employees, including Aguilar, to sign a Confidentiality, Non-Disclosure and Non-Competition Agreement ("Agreement"). At issue in this case is the Agreement's non-competition provision which reads, in relevant part, as follows:

> The Employee, during the term of this agreement and for a period of one (1) year from the last date Employee provides services to [Ram] . . . shall not directly or indirectly . . . anywhere within the territory of Miami-Dade County, and Broward County, Florida . . . [c]onduct competitive business or work for anyone whom [sic] conducts competitive business, with any of the past or current clients of [Ram], or clients acquired during employee's tenure.

[Ram's] business entails design, manufacture and sale of water vessels and related products.

In July 2022, Aguilar left Ram's employ and began working for SeaHunter Boats, whom Ram alleges is one of its direct competitors. Ram filed the instant lawsuit against Aguilar seeking to enjoin Aguilar from working (i) specifically for SeaHunter, and (ii) more generally, with or for a competitor of Ram within the restricted geographic area outlined in the Agreement. SeaHunter was identified, but was not named as a defendant, in Ram's complaint.

Aguilar was served with Ram's complaint on November 11, 2022, and, because Aguilar filed no responsive paper or pleading, a clerk's default was entered against Aguilar on December 14, 2022. Shortly thereafter, on December 20, 2022, Ram filed an *ex parte* Motion for Temporary Injunction in which it sought the same injunctive relief it sought in its verified complaint.[1] Ram's *ex parte* motion was accompanied by an affidavit from Ralph Torres, one of Ram's owners. Apparently, after learning of Ram's complaint, SeaHunter terminated Aguilar.

---

[1] In that portion of its *ex parte* motion seeking injunctive relief, Ram sought to enjoin Aguilar from working for "Invincible Boats." Presumably, this was a typographical error because, in other parts of the motion, Ram asserts, consistent with its verified complaint, that Aguilar was in violation of the Agreement based on Aguilar's employment with SeaHunter.

On January 9, 2023, Ram filed a supplemental affidavit of Torres asserting that Aguilar "left his employment with SeaHunter and recently began employment with" Midnight. With regard to Midnight, the supplemental affidavit asserted that "Midnight . . . produces and manufactures center console vessels whose appearance is similar to that of [Ram]. Midnight . . . offers similar options, models, and styles to those of [Ram]. [Ram] and Midnight compete for the same consumer. Midnight . . . is a direct competitor of [Ram]." Ram did not seek to amend its verified complaint to identify Midnight as Aguilar's employer, nor did Ram file an amended *ex parte* injunction motion seeking to enjoin Aguilar from working for Midnight, nor did Ram notify Midnight that it sought to enjoin Aguilar from working for Midnight.

Three days later, on January 12, 2023, the trial court conducted a Zoom hearing on Ram's *ex parte* injunction motion. At the hearing, Torres testified that Midnight was a competitor of Ram. After stating that "we have a default already," the trial court orally granted Ram's injunction motion.[2]

Counsel for Ram then stated: "We're going to send a letter and a copy of Your Honor's order to Midnight and they can govern themselves. If they

---

[2] Prior to adjourning the hearing, the trial court, instructing Ram's counsel on what to include in the written injunction order, again emphasized the importance of the default on its ruling: "Include in the order though that there has been a default as well entered because I think that's also a main issue here. It's basically, everything has been admitted. . . ."

feel that they're not competing, we'll hear from them. If they feel they're competing, I'm sure they're going to let Mr. Aguilar go."

Later that day, the trial court entered its written injunction order enjoining Aguilar from working for "anyone who conducts competitive business" with Ram. The injunction order, though, further makes the specific factual finding that Midnight, where Aguilar "is presently working," is a "competitor[] of [Ram] and vie[s] for the same market share" as [Ram].[3]

Upon being made aware of the injunction order, Midnight filed its February 1, 2023 motion seeking to intervene in the proceedings to establish that Midnight and Ram are not "competitors" for the purpose of the Agreement and similar agreements that Ram has with other individuals.

After conducting an April 26, 2023 hearing, the trial court entered the order on appeal denying Midnight's intervention motion. The order states: "The non-party is, in essence, requesting that this Court reconsider its prior ruling on a temporary injunction of a defaulted defendant. This is not an issue that is subordinate to the claims in this cause."

It is from this order that Midnight timely appeals.

---

[3] Notwithstanding the language contained in the relevant provision of the Agreement, no evidence was presented, nor were any findings made by the trial court, regarding "past or current clients of [Ram] or clients acquired during [Aguilar's] tenure."

5

## II. Analysis[4]

Intervention is governed by Florida Rule of Civil Procedure 1.230, which reads in its entirety, as follows:

> Anyone claiming an interest in pending litigation may at any time be permitted to assert a right by intervention, but the intervention shall be in subordination to, and in recognition of, the propriety of the main proceeding, unless otherwise ordered by the court in its discretion.

Fla. R. Civ. P. 1.230.

The trial court concluded that intervention was not appropriate because Midnight sought to have the court revisit its injunction order, and that such a claim somehow was not subordinate to Ram's principal claim seeking to enjoin Aguilar from working for Midnight.

This was error. Plainly, Midnight had an interest in the litigation because Aguilar was enjoined from working for Midnight and because the trial court made factual findings regarding Midnight. While Midnight's interest in establishing that it is not a competitor of Ram for the purposes of the Agreement (and others like it) is significant, it is nevertheless subordinate to and in recognition of Ram's injunction claim against Aguilar.

---

[4] We generally review an order denying a motion to intervene for abuse of discretion. Larraín Troncoso v. Ossandón Larraín, 273 So. 3d 1117, 1118 n.1 (Fla. 3d DCA 2019).

6

Beyond that, though, the trial court should have allowed Midnight to intervene on due process grounds. In its injunction order, the trial court (i) enjoins Aguilar from working for a Ram competitor, but also (ii) identifies Midnight as Aguilar's current employer, and (iii) finds, as a factual matter, Midnight to be a competitor of Ram. Yet, the record reflects that, in making its findings, the trial court relied not only on evidence adduced at a hearing of which Midnight had no notice, but also the trial court heavily relied upon Aguilar's default. While the effect of Aguilar's default is to admit the well-pled factual assertions in Ram's complaint, see Fiera.com, Inc. v. DiGicast New Media Grp., Inc., 837 So. 2d 451, 452 (Fla. 3d DCA 2002), it is well-settled that Aguilar's default did not bind Midnight to Aguilar's admissions. Dade Cnty. v. Lambert, 334 So. 2d 844, 847 (Fla. 3d DCA 1976). In any event, because Ram's complaint contained no mention whatsoever of Midnight, Aguilar's default could not form the basis for any findings related to Midnight.

Also, as conceded by Ram at oral argument, it was Ram's intent that, in addition to binding Aguilar, the injunction bind Midnight, as Aguilar's current employer and Ram's alleged competitor. Indeed, at the injunction hearing, Ram's counsel unequivocally stated that he was going to provide notice of the injunction to Midnight so that Midnight could govern itself accordingly. While Ram is correct that, consistent with Florida Rule of Civil

7

Procedure 1.610(c),[5] an injunction may bind a non-party, even a non-party with notice of the injunction cannot be bound without having an opportunity to be heard. Leighton v. First Universal Lending, LLC, 925 So.2d 462, 465 (Fla. 4th DCA 2006). Midnight had no such opportunity.

Upon receipt of the injunction, Midnight faced a dilemma: either terminate Aguilar or defy the injunction and face the prospect of potential sanctions. Midnight's status as a non-party precluded Midnight from appealing the injunction. Edwards v. CIT Bank, N.A., 306 So. 3d 217, 219 (Fla. 3d DCA 2020) (holding that, because a non-party has no standing to appeal a judgment, it must move to intervene in the proceedings). Indeed, Midnight's status as a non-party left it no practical alternative but to intervene in the case to challenge the injunction and the factual findings underpinning it.

We conclude that, under the circumstances presented in this case, the trial court should have allowed Midnight to intervene in the action. See Omni Nat'l Bank v. Ga. Banking Co., 951 So. 2d 1006, 1007 (Fla. 3d DCA 2007) ("In order for a party to intervene, its interest 'must be in the matter in

---

[5] This rule reads, in relevant part: "Every injunction . . . shall be binding on the parties to the action . . . and on those persons in active concert or participation with them who receive actual notice of the injunction." Fla. R. Civ. P. 1.610(c).

litigation, and of such a direct and immediate character that the intervenor will either gain or lose by the direct legal operation and effect of the judgment.'" (quoting Union Cent. Life Ins. Co. v. Carlisle, 593 So. 2d 505, 507 (Fla. 1992))). "Intervention should be liberally allowed." Nat'l Wildlife Fed'n Inc. v. J.T. Glisson, 531 So. 2d 996, 998 (Fla. 1st DCA 1988).[6]

Reversed.

---

[6] We leave for another day the issue of whether, in an injunction action seeking to enjoin a former employee from working for a current employer, the former employer must name, as indispensable parties, both the former employee and the current employer. See 1800 Atlantic Cond. Ass'n v. 1800 Atlantic Devs., 569 So. 2d 885 (Fla. 3d DCA 1990).